LAW OFFICES OF CARL M. VARADY

CARL M. VARADY
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawai'i 96813
Telephone (808) 523-8447

Attorney for Plaintiff
"JANE MOTHER"

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| "JANE MOTHER", | CIVIL NO.  CV00-00446 LEK |
| Plaintiff, | PLAINTIFF'S OBJECTIONS TO DEFENDANT STATE OF HAWAII'S BILL OF COSTS; CERTIFICATE OF SERVICE |
| vs. | |
| STATE OF HAWAI'I, | Trial Date: October 4, 2005 |
| Defendant. | Judge: Hon. Leslie E. Kobayashi |

### PLAINTIFF'S OBJECTIONS TO DEFENDANT STATE OF HAWAII'S BILL OF COSTS [FILED FEBRUARY 2, 2006]

Pursuant to Rule 54(d)(1), Fed. R. Civ. Pro., and LR 54.2, Plaintiff

"Jane Mother" submits the following opposition to Defendant State of Hawai'i's

Bill of Costs.

# I.  <u>FACTS</u>.

In the present case, Plaintiff's claims at trial consisted of claims for discrimination and retaliation under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.  Judgment for Defendant was granted on partial findings under Rule 52(c), Fed. R. Civ. Pro., at the conclusion of Plaintiff's case on October 7, 2005.  The Defendant State of Hawaiʻi (the "State") filed a bill of costs in this matter, after the Court ruled it its favor in the amount of $27,349.93.  The costs sought are for witness fees, service of summonses and subpoenae, court reporters and transcripts and photocopying.  The two major items are costs for photocopying and deposition transcripts, each exceeding $13,000.00.

None of these costs are recoverable, as a matter of law, as detailed below.  However, Plaintiff also will discuss the requested costs independently, after dealing with the primary issue: awards of fees and costs in ADA and Section 504 cases in the Ninth Circuit.

# II.  <u>ARGUMENT</u>.

A.    <u>Costs are not Available to Defendant as a Matter of Law</u>.

By adopting the fee shifting provisions of the ADA and Section 504, like those of other civil rights statutes, Congress sought to encourage vigorous enforcement of its anti-discrimination and anti-retaliation policies through private

lawsuits brought by aggrieved plaintiffs who could not otherwise afford attorneys.
The legislative history of the civil rights attorneys' fees statutes establishes that
they were enacted to induce competent counsel to undertake meritorious civil
rights litigation by assuring plaintiffs that, if they were successful, their attorneys
would be paid in the same manner as with other fee-paying clients, even when the
results were entirely non-pecuniary.  *See, Hensley v. Eckerhart*, 461 U.S. 424
(1983). The Ninth Circuit has acknowledged these standards in a variety of cases
where an award of attorneys' fees and costs as apply is provided for to successful
civil rights litigants.  *E.g., Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2002).

        These same policy considerations do not apply where defendants seek
to obtain awards of fees and costs in cases where civil rights plaintiffs are not
successful.  As awarding costs in such cases would detract from these
Congressional policies and deter civil rights plaintiffs, costs are not awarded under
ADA and Section 504 of the Rehabilitation Act, unless  plaintiff's action is found
to be "frivolous, unreasonable, or without foundation."  *Brown v. Lucky Stores*,
246 F.3d 1182, 1191 (9th Cir. 2001).   In reaching this conclusion, the Ninth
Circuit held that the fee-shifting provisions of federal civil rights statutes supersede
Rule 54(d), Fed. R. Civ. Pro.  *Id.* 1190-91.

        The Ninth Circuit's conclusion rests on the analysis of *Christiansburg*

*Garment Co. v. EEOC*, 434 U.S. 412, 421, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978), which ruled that attorneys' fees would be awarded to successful defendants in Title VII cases only where the Court found the action to be "frivolous, unreasonable, or without foundation."  246 F.3d 1191; *accord, Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th Cir. 1996) (applying the same analysis to California Fair Employment and Housing Act as Ninth Circuit employs for ADA claims). Because the fee and cost shifting provision of the ADA[1] made the standard for an award of fees and costs parallel, the Ninth Circuit concluded that the *Christiansburg* test also applies to an award of costs to a prevailing defendant under the ADA.

There is little doubt that the same policies underlying fees and costs in civil rights cases apply specifically to disability rights claims. *Parker v. Sony Pictures Entm't, Inc*., 260 F.3d 100, 111 (2d Cir. 2001); *Summers v. Teichert & Son, Inc*., 127 F.3d 1150, 1154 (9th Cir. 1997).  Nor is there any doubt that the Ninth Circuit's holding in *Brown* and *Summers* corresponds with the conclusions reached by numerous other courts. *E.g., J.C. v. Regional School Dist. 10,* 278 F.3d

---

1    The attorney's fee provision of the ADA allows the court to award a prevailing private party "a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. §  12205 (emphasis added).  And the remedies, procedures and rights set forth in 29 U.S.C. § 794a are congruent with those of 42 U.S.C. § 12133.  *See, Bragdon v. Abbott*, 524 U.S. 624, 632, (1988).

119, 125 (2d Cir. 2002)(prevailing party status under 42 U.S.C. § 1988 and Section

504 is determined using same standards); *Adkins v. Briggs & Stratton Corp*., 159

F.3d 306, 307 (7th Cir. 1998) (applying *Christiansburg* to 42 U.S.C. § 12205);

*LaChance v. Duffy's Draft House, Inc*., 146 F.3d 832, 838 (11th Cir. 1998)

(applying the standard in *Christiansburg* to a Rule 38 motion in an ADA case);

*Pottgen v. Missouri State High Sch. Activities Ass'n*, 103 F.3d 720, 723 (8th Cir.

1997) (same framework applies to determinations of prevailing party status under

42 U.S.C. § 12205 and Section 504 as under 42 U.S.C. § 1988); *Homeward Bound,*

*Inc. v. Hissom Mem'l Ctr*., 963 F.2d 1352, 1354 n.1 (10th Cir. 1992) (applying the

same standard for awarding attorney's fees to plaintiffs under the Rehabilitation

Act as under 42 U.S.C. § 1988 because "the language of the statutes is identical");

*Child v. Spillane*, 866 F.2d 691, 692 n.1 (4th Cir. 1989)(same); *Disabled in Action*

*of Pa. v. Pierce*, 789 F.2d 1016, 1018-19 (3d Cir. 1986)(same); *Hall v. Bolger*, 768

F.2d 1148, 1151 (9th Cir. 1985)(same); *Jones v. Illinois Dep't of Rehabilitation*

*Servs*., 689 F.2d 724, 730 n.8 (7th Cir. 1982) (Rehabilitation Act fee awards are

governed by the same considerations controlling in § 1988 actions).  As the First

Circuit explained:

> We hold that .attorney's fees may not be
> awarded to a prevailing defendant under the
> ADA unless the defendant establishes that
> the plaintiff's suit was totally unfounded,

frivolous, or otherwise unreasonable or that the plaintiff continued the litigation after it clearly became so. The same standard applies to claims under the Rehabilitation Act, given that the language is virtually identical. When Congress adopted the language of the ADA as to attorney's fees in 1990, it was aware of the *Christiansburg* rule and its extension to § 1988 actions in *Hughes*. The ADA's language on attorney's fees is, in relevant part, identical to that of § 1988. The choice was deliberate, and so we import the *Christiansburg* test into the language of the ADA. Even if we were unaware of congressional sentiment on this matter, moreover, we would agree with Felix Frankfurter who wrote more than a half-century ago, "if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 537 (1947).

*Bercovitch v. Baldwin School,* 191 F.3d 8, 11 (1st Cir. 1999)(parents brought ADA and Section 504 claims against school for discriminatory expulsion).

The Supreme Court further cautions that in applying the above criteria, a court must resist the temptation to engage in *post hoc* reasoning that, because a plaintiff has not ultimately prevailed, its complaint must have been frivolous, unreasonable or without foundation from the beginning. *Christiansburg*, 434 U.S. at 421-22;

As the plaintiff in *Brown* had both her ADA and Section 504 claims dismissed without findings that it was frivolous, unreasonable or without foundation, the case is on all fours with plaintiff's case. This is additionally confirmed by the fact that Plaintiff's claims had survived an earlier motion for summary judgment. The Ninth Circuit recognizes that survival against a dispositive defense motion as evidence that the claim is not without merit. *E.g., Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999); *Jensen v. Stangel*, 762 F.2d 815, 818 (9th Cir. 1985).

Given the Court's specific findings, in the present case that the conduct complained and the evidence presented established a *prima facie* case for a retaliation claim based on the filing of the family court petition, Plaintiff's claims were not frivolous, unreasonable or without merit, as a matter of law. Thus, under Ninth Circuit precedent, the State's requests for an award of costs must be denied.[2]

---

2    Even in the Court had found the case frivolous, it could not make any award against Plaintiff without first determining the extent of the hardship to Plaintiff that would result from awarding costs under the fee-shifting statute. The Ninth Circuit has stated that, where the award is sizeable, an award against a Plaintiff for a frivolous civil rights lawsuit should not subject the plaintiff to financial ruin. *Miller v. Los Angeles Bd. of Ed.*, 827 F.2d 617, 621 (9th Cir. 1987). The Court must make specific findings that such sanctions would not result in financial calamity to the Plaintiff even if the case were found to be frivolous. *Id.*

B.    <u>The Request Fails to Comply with LR 54.2(c)</u>

LR 54.2(c) states that a request for costs:

> [M]ust be supported by a memorandum setting forth the grounds and authorities supporting the request and an affidavit that the costs claimed are correctly stated, were necessarily incurred, and are allowable by law.  The affidavit must also contain a representation that counsel met and conferred in an effort to resolve any disputes about the claimed costs, and <u>the prevailing party shall state the results of such a conference, or that the prevailing party made a good faith effort to arrange such a conference, setting forth the reasons the conference was not held</u>.

However, no such statement is set forth in an affidavit, as required by the Rule.

The application is facially deficient, therefore and must be denied.

C.    <u>The Request is Factually Meritless</u>.

1.    <u>Witness fees</u>.

The State first seeks fees for a witness, Ms. Kanda, who appeared on the wrong day, before Plaintiff had rested and, for Ms. Kanda's convenience, was taken out of order.  Her testimony played no role in the Court's decision and would have been wholly unnecessary had the Defendant waited until the close of Plaintiff's case and proceeded with its motion.  The request for costs associated with her testimony should be denied.

2.    <u>Deposition and trial subpoenas</u>.

Defendant seeks reimbursement for trial subpoenas for its own employees and for witnesses never called to testify at trial. This request should be denied, in full, as there has been no assertion that these subpoenas were necessary to compel attendance and, in fact, none of the witnesses testified or appeared, save Ms. Kanda.

   3.  <u>Deposition transcripts</u>.

Defendant seeks deposition costs for witnesses whose testimony at trial was not offered, and, in fact, barred by the Court. On September 28, 2005, the Court granted the Plaintiff's motion *in limine* to bar from use as direct evidence at trial the depositions of Steve Kux (taken 9/13/05), Dr. Dennis McLaughlin (taken 9/13/05), Jeremy Lam, M.D. (taken 9/14/05), Ivalee Sinclair (taken 9/15/05), Dr. Mitzi Gold (taken 9/15/05), Dean Nagamine, Esq. (taken 9/15/05), Dr. Evelyn Yanagida (taken 9/20/05) and Dr. June Ching (taken 9/20/05). Defendant had failed to designate these depositions timely for designation and use at trial as mandated by the Court's Rule 16 Order. Thus, Defendant was precluded from using these depositions directly. In fact, none of these depositions was taken before the deadline for such designations had occurred. Nor were they used for impeachment or other purpose. Nor, were any other deposition transcripts designated timely. The Court should deny reimbursement for deposition

transcripts and related subpoenas.

Additionally, the medical records subpoenas proved wholly unnecessary.  After a barrage of subpoenas issued in June 2002, the Court ultimately limited the records available to Defendant to the period of 1999 to 2000. No records of treatment existed for that time period, and Defendant was informed of this fact. On February 2, 2005, after Defendant sought reconsideration and modification of the Court's ruling, based on *in camera* review of the Plaintiff's medical records, the Court modified its prior order and permitted Defendants to obtain and use certain Kapiolani Counseling Center records, stating that it found pages 1-19, page 25, page 28, pages 34-35, page 44, and page 46 relevant to the claims and defenses being raised in the instant action, and thus discoverable.  Thus, reimbursement for other medical records obtained by Defendant, that could not be used because they were outside the Court's order, should not be reimbursed.

Finally, Defendant asserts that "it is impossible to separate out sheriff's service fee from copying costs" for records depositions.  If that is the case, the onus of proving the individual charges should fall on Defendant.

    4.   <u>Photocopying Costs are not Clearly Described and are Wholly Unreasonable</u>.

Defendant seeks photocopying costs at the rate provided by LR 54.2(f)(4) of $.15 per page in-house, without stating that this was the actual cost

Case 1:00-cv-00446-LEK    Document 267    Filed 03/03/2006    Page 11 of 20

incurred.  Nor, is there any means of identifying what Defendant is referring to when claiming reimbursement at that rate for "all filed documents" multiplied by 3. *See,* Bill of Costs at 8-9.  Defendant additionally submits invoices for copying, without specifically identifying what was copied, or describing how Defendant determined that documents that were filed all were copied in-house and those sent out were other documents.

The request is speculative and requires the Court to sift through the submitted material to determine what the copied material was, what it cost to copy it and how it was used in the case, if at all.  And, as all of Defendant's trial exhibits were struck, because of its failure to comply with the Rule 16 meet and confer requirements and to properly identify them for review prior to such meeting.

Finally, the copying charges for medical records that the Court barred Defendant from using on relevance grounds should not be reimbursed.


D.    <u>Summary of Amounts</u>.

For the reasons set forth above, should the Court reject Plaintiff's argument, based on Ninth Circuit and Supreme Court precedent, that costs are not allowed as a matter of law, Plaintiff respectfully requests that the following costs (identified as described in Defendant's bill of costs) be DENIED:

-11-

| Cost Identified | Amount |
|---|---|
| Witness and travel fees for Kinue Kanda | $248.00 |
| Summons & Subpoenae | |
| Subpoena for Kinue Kanda | $40.00 |
| Subpoena for Dr. Daniel Bruining | $165.00 |
| Subpoena for Sharon Deloughery | $218.50 |
| Subpoenas and mileage for William Santos, John Walters Rhoda Napoleon Jon Itomura Gwen Higgins Kenneth Ling Cheryl Lippman Katharine Wallin Matlbie Napoleon Shelly Sypowicz Catherine Caine | $422.00[3] |
| Subpoena and mileage for John Walters | $32.00 |
| Subpoena and mileage for Dr. June Ching | $38.00 |
| Subpoena and mileage for Karen Hirose | $41.00 |
| Subpoena and mileage for Bonita Gravelle | $41.00 |

---

3    The invoices submitted as Defendant's exhibits show a total of only $388.00 for service and milage on these individuals.

-12-

| | |
|---|---|
| Subpoena and mileage to serve Steve Kux | $112.00[4] |
| Depositions & Transcripts | |
| 7/12/02, "the federal court proceeding" | $134.05 |
| 9/15/05 Sharon Deloughrey's video deposition | $1,646.85 |
| 12/28/05 Video conference room for Sharon Deloughrey's video deposition[5] | $453.75 |
| 11/1/05 Documents "drafted in conjunction with" Sharon Deloughrey's video deposition[6] | $168.60 |
| 6/3/02 Documents "which appears to be production obtained from Plaintiff"[7] | $104.17 |
| 11/16/04 Nancy Luckie's records, which Defendant was precluded from using | $182.85 |
| 3/31/05 Deposition of Jane Mother | $604.76 |
| 6/9/05 Deposition of Jane Mother | $1,036.05 |

---

4    There is no documentation for this amount, on the $30.00 for three attempts at service.

5    No such video deposition occurred on that date.

6    No such documents were produced and the description does not permit Plaintiff to respond.

7    Again, the description is inadequate and does not permit a response.

| | |
|---|---|
| 7/24/02 Depositions of Kris Murakami, Holly Shikada and Cheryl Lippman | $1,732.73 |
| 6/20/05 Deposition of John Flynn | $183.15 |
| 6/22/98 Family Court transcript | $25.78 |
| 6/12/02 Records deposition for Drs. Ching, Luckie,[8] Lam, McLaughlin, Legoff and Pangilinan, which Defendant was precluded from using | $647.76 |
| 6/14/02 Records depositions for Kapiolani Medical Center and Straub, which the Court prevented Defendant from using | $288.04 |
| 6/17/02 Kapiolani Counseling Center records, all but 25 pages of which the Court prevented Defendant from using | $147.13 |
| 6/24/02 Records from Dr. James Pearce, M.D. | $268.02 |

---

[8]     Which were included twice in the bill of costs at pp. 4 and 5.

| | |
|---|---|
| 6/1/02 "Costs advance" for records depositions of Dr. Lam, Kapiolani Medical Center, Straub Medical Center, James Pearce, MD, Dr. June Ching, Dr. Dennis McLaughlin, Daniel Legoff, Learning Disabilities Assn, Dr. David Hamlin, Renee Pangilinan, Dr. Luckie, Dr. Gold and Dr. Gottlieb | $822.91 |
| 7/5/02 Dr. Gottlieb records | $129.95 |
| 8/1/402 Kapiolani Medical Center records | $69.79 |
| 8/29/05 Deposition of Maltbie Napoleon | $118.75 |
| 8/19/05 Records from Dr. Mizti Gold | $48.96 |
| 8/31/05 Deposition of Maltbie Napoleon | $115.47 |
| 9/13/05 Records from Dr. Mitzi Gold | $40.62 |
| 9/23/05 Deposition of Dr. June Ching | $526.56 |
| 9/23/05 Deposition of Dr. Evelyn Yanagida | $407.81 |
| 9/27/05 Deposition of Dr. McLaughlin and Steve Kux | $827.03 |
| 9/28/05 Deposition of Dr. Jeremy Lam | $447.97 |

| | |
|---|---|
| 9/30/05 Depositions of Ivalee Sinclair, Dr. Gold, Dean Nagamine | $976.50 |
| 10/18/05 Deposition costs for Steve Kux[9] | $98.96 |
| 10/18/05 Deposition costs for Dr. McLaughlin, Dr. Lam | $156.25 |
| 10/18/05 Deposition costs advanced for Ivalee Sinclair, Dr. Yanagida, Dr. Ching | $226.04 |
| 9/23/05 Vide deposition of Steve Kux | $359.46 |
| 9/26/05 Video taped deposition of Sharon Delaughery | $39.06 |
| Photocopying | |
| 8/16/05 certified documents | $16.00 |
| 7/7/02 Kapiolani Medical Center records | $15.08 |
| 3/22/02 New Tech Imaging | $212.67 |
| 3/27/02 New Tech Imaging | $73.17 |
| 5/7/02 New Tech Imaging | $150.50 |
| 5/21/02 New Tech Imaging | $114.02 |
| 5/29/02 New Tech Imaging[10] | $822.79 |
| 5/20/02 New Tech Imaging | $601.93 |

---

9       Apparently incurred _after_ trial.

10      For a second set of discovery to be bate stamped for Defendant's convenience after the Court denied Defendant's request to force Plaintiff to do so.

-16-

| | |
|---|---|
| 6/6/02 New Tech Imaging[11] | $820.45 |
| 6/24/02 New Tech Imaging[12] | $47.10 |
| 6/17/02 New Tech Imaging[13] | $592.87 |
| 6/17/02 New Tech Imaging[14] | $115.52 |
| 7/11/02 New Tech Imaging, unidentified discovery | $143.85 |
| 7/23/02 New Tech Imaging, unidentified documents | $750.19 |
| 7/11/03 New Tech Imaging, discovery produced by Plaintiff | $144.14 |
| 7/18/05 New Tech Imaging, for Dr. Eliashoff[15] | $486.07 |
| 7/22/05 New Tech Imaging, 1,143 pp. Mediation Statement | $305.70 |
| 8/10/05 New Tech Imaging, copies to Robert Marvit[16] | $125.36 |

---

11    For a third set of medical records discovery produced to Robert Marvit, MD.

12    Similarly, for sets of medical records discovery produced to Robert Marvit, MD, Dr. Choy and John Walters.

13    Further sets of medical records produced to Robert Marvit, MD, Dr. Choy and John Walters.

14    Further medical records produced to Robert Marvit, MD, Dr. Choy and John Walters.

15    Apparently another set of Plaintiff's medical records.

16    Documents for his "supplemental report" that was struck by the Court.

| | |
|---|---|
| 8/27/05 New Tech Imaging, trial preparation[17] | $2,011.86 |
| 9/6/05 New Tech Imaging[18] | $1,233.74 |
| 10/6/05 New Tech Imaging[19] | $260.36 |
| 9/28/05 New Tech Imaging[20] | $239.67 |
| 5/12/05 New Tech Imaging[21] | $48.27 |
| 6/17/05 New Tech Imaging, medical records to Dr. Eliashoff | $177.50 |
| 6/17/05 New Tech Imaging, medical records to Dr. Eliashoff | $126.48 |
| 6/17/05 New Tech Imaging, medical records to Dr. Eliashoff | $24.17 |
| 6/29/05 New Tech Imaging,[22] medical to Dr. Eliashoff | $590.94 |

---

17    Apparently recopying all the documents produced in the case by either party.  The Court precluded use of all of these documents.

18    Again, copying documents for trial which the Court did not permit Defendant to use.

19    Copying documents as exhibits for trial after the Court ruled on September 28, 2005, that Defendant could not use its proposed exhibits.

20    Exhibits for trial barred by the Court.

21    Exhibits for trial barred by the Court.

22    A duplicate copy of records already sent to him.

-18-

| | |
|---|---|
| 8/30/05 National Archives Trust Fund, court records for use at trial. | $41.00 |
| In-house copying of all pleadings | $2,747.25 |
| Total | $27,431.93[23] |

## III.  CONCLUSION.

For reasons set forth above, Plaintiff respectfully requests that these

Objections be GRANTED and that Defendant's bill of costs be DENIED.

DATED: Honolulu, Hawai'i, March 3, 2006

/s/ Carl M. Varady

_____

CARL M. VARADY

Attorney for Plaintiff
"JANE MOTHER"

---

[23] This number, $27,431.93, is the sum of the costs claimed by Defendant which results from use of the automatic calculation function in WordPerfect. As pointed out above, a detailed examination of the invoices submitted by Defendant produces a different result that the amounts claimed in the body of the bill of costs. The service and subpoena fees in particular to not aggregate to the amount claimed, which is overstated by the amount of $54.00 when compared to the invoices presented.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the attached document was served by placing a copy in the United States mail, first-class postage prepaid, on the date indicated below, addressed to:

REGINALD YEE, ESQ.
Deputy Attorney General
425 Queen Street
Honolulu, Hawaiʻi 96813

DATED: Honolulu, Hawaiʻi, March 3, 2006

/s/ Carl M. Varady
CARL M. VARADY